**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER H. ROWE** *and* | ) | |
| **NANCY L. ROWE**, *husband and wife*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO. 3:12-81** |
| **v.** | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| **NATIONWIDE INSURANCE COMPANY,** | ) | |
| **NATIONWIDE,** *and* **NATIONWIDE** | ) | |
| **INSURANCE COMPANY OF AMERICA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER OF COURT

### I.       SYNOPSIS

Pending before the Court are cross-motions for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56.  (*See* ECF Nos. 38, 41, 47, and 75).  For the reasons stated below, the Court will **GRANT** Defendants' first motion for summary judgment (ECF No. 38) and will **DENY** Plaintiffs' motions for summary judgment (ECF Nos. 41 and 47)[1] and Defendants' supplemental motion for summary judgment (ECF No. 75).

### II.      JURISDICTION AND VENUE

The Court has diversity jurisdiction in this removal action pursuant to 28 U.S.C. §§ 1332 and 1441.  Venue is proper under 28 U.S.C. § 1441(a).

---

[1] Plaintiffs' two summary judgment motions (ECF Nos. 41 and 47) are the same, except for certain redacted information.  The first motion (ECF No. 41) is a redacted version, while the second motion (ECF No. 47) is a sealed, non-redacted version.  The Court has reviewed the protected information in the sealed, non-redacted motion (ECF No. 47) and its supporting documents (ECF Nos. 48, 66, 67, 68), but will cite only to the redacted version of the motion (ECF No. 41) and its supporting documents (ECF Nos. 43, 45, 65).

### III. BACKGROUND

This case stems from an automobile accident in which Plaintiff Christopher Rowe ("Mr. Rowe") sustained personal injuries and property damage to his car. Plaintiffs filed a property damage claim and an underinsured motorist claim ("UIM claim") with their insurance carrier, Nationwide Insurance Company of America ("Nationwide"). Plaintiffs now allege that Nationwide failed to properly handle their claims. Plaintiffs filed suit and assert causes of action against Nationwide for breach of contract and statutory bad faith.

#### A. Statement of Facts

The following facts are not in dispute.[2] On July 5, 2007, Mr. Rowe was involved in an automobile accident while driving his car, an Oldsmobile 98, model year 1996. (ECF No. 65-1 ¶¶ 9, 10). As alleged in the complaint, Mr. Rowe was stopped at a traffic signal when another vehicle, driven by Opal Gayle, struck the rear of Mr. Rowe's car, substantially destroying the car and causing injuries to Mr. Rowe. (ECF No. 1-2, Compl. ¶¶ 8-10). Mr. Rowe was not at fault in the accident. (ECF No. 65-1 ¶ 13).

At the time of the accident, Plaintiffs' car was covered by an automobile insurance policy ("the policy") issued by Nationwide. (*Id*. ¶¶ 3-4, 11-12). Among other things, the policy provided full tort coverage, up to $500,000 in UIM bodily injury coverage, and actual cash value minus a $250 deductible for collision coverage. (*Id*. ¶¶ 5-7).

---

[2] Plaintiffs did not file a response to Defendants' concise statement of material facts (ECF No. 58). Accordingly, the facts contained in Defendants' CSMF are deemed admitted pursuant to Local Rule 56(E).

Plaintiffs filed suit against Ms. Gayle, after which Lincoln General Insurance Company, Ms. Gayle's insurer, offered its full bodily injury policy limit of $15,000 on February 26, 2010. (*Id.* ¶¶ 48-49). On March 8, 2010, Nationwide waived its subrogation interest against Ms. Gayle related to the bodily injury claim. (*Id.* ¶ 51). Plaintiffs also submitted UIM and property damage claims to Nationwide.

### *Property Damage Claim*

Initially after the accident, Plaintiffs' car was towed and stored at a local salvage yard. (ECF No. 58-7 at 28-30). Approximately one month after the accident, Plaintiffs' car was transported to a Nationwide total loss center for evaluation. (*Id.* at 28). Within one month after taking Plaintiffs' car for evaluation, Nationwide notified Plaintiffs that the car was a total loss. (*Id.* at 29-30). Nationwide offered Plaintiffs $3,037.59 for the property damage to the vehicle. (*Id.* at 62). Plaintiffs rejected Nationwide's offer, demanding $6,500 instead. (*Id.* at 45).

While in Nationwide's possession, Plaintiffs' car sustained further damage in the amount of $1,658.74. (*Id.* ECF No. 65-1 ¶¶ 20, 28). On April 24, 2008, Nationwide returned the car to Plaintiffs. (*Id.* ¶ 22).

After rejecting Nationwide's offer, Plaintiffs filed suit against Nationwide on July 1, 2009, for the property damage claim. (*Id.* ¶ 30). On August 31, 2009, judgment was entered for Plaintiffs in the amount of $4,776.29. (*Id.* ¶ 31). On November 19, 2009, Nationwide issued a check to Plaintiffs for $4,857.66 on the property damage claim. (*Id.* ¶ 33).

*UIM Bodily Injury Claim*

According to the complaint, the accident caused injuries to Mr. Rowe's neck and back[3] and aggravated a pre-existing lipoma on his forehead, which had to be surgically removed.  (ECF No. 1-2, Compl. ¶¶ 15-17).  Plaintiffs, represented by counsel, submitted a UIM claim to Nationwide on October 5, 2007.  (ECF No. 58 ¶ 7).

Nationwide assigned the UIM claim to Claim Representative Craig Robinson, who requested a copy of the police report and a status update regarding Mr. Rowe's medical treatment on October 19, 2007.  (*Id.* ¶¶ 8-9).  Robinson contacted Lincoln General, Ms. Gayles' liability carrier, to discuss the claim on November 6, 2007.  (*Id.* ¶ 10).

Over the next 17 months, Robinson continued to follow-up with Plaintiffs' counsel, but was unable to fully evaluate the claim because Plaintiffs did not provide complete medical records.  (*Id.* ¶ 13-14).  By February 29, 2009, Nationwide had paid $946 in medical benefits for Mr. Rowe's treatment based on submitted chiropractic treatment records.  (*Id.* ¶ 15).  On March 23, 2009, Plaintiffs' counsel provided Nationwide with additional medical records.  (*Id.* ¶ 16).  On July 1, 2009, Plaintiffs' counsel informed Nationwide that she was unable to estimate a value for the UIM claim until she received

_____

[3] Plaintiffs allege, "[Mr. Rowe sustained] injuries to his neck and upper back with constant pain on both sides of his neck causing difficulty with his sleeping and increased pain when sitting or standing as well as when he would turn his neck from side to side.  The neck and upper back muscles were weak.  . . .  [Mr. Rowe] was found to have decreased and painful cervical flexion, right and left later flexion and rotation; shoulder depression-positive bilaterally; cervical distraction-positive; palpable C3 through T4 muscle spasms bilaterally with trigger point pain with a potential for disc degeneration of C5 and C6 in the vertebra."  (ECF No. 1-2, Compl. ¶¶ 15-17).

additional medication information.  (*Id.* ¶ 17).  On January 11, 2010, Nationwide received a report prepared by Mr. Rowe's chiropractor.  (*Id.* ¶ 19).

On March 8, 2010, Nationwide waived its subrogation rights after Lincoln General tendered its $15,000 bodily injury policy limits.  (*Id.* ¶ 20-21).  On May 5, 2010, Plaintiffs submitted their UIM demand package to Nationwide, which included photographs of Mr. Rowe, two reports from Mr. Rowe's chiropractor, and additional chiropractic treatment records.  (*Id.* ¶ 22).  Plaintiffs demanded $313,500.  (*Id.* ¶ 23).

Nationwide then conducted an internal medical management review.  (*Id.* ¶¶ 26-29).  Following this review, Nationwide informed Plaintiffs that the injuries, as presented, did not surpass the $15,000 bodily injury credit from Lincoln General, but that Nationwide would further evaluate the claim.  (*Id.* ¶ 29).

To further evaluate the claim, Nationwide obtained Mr. Rowe's statement under oath on September 22, 2010 (*id.* ¶ 30); retained Dr. Seraly, a licensed dermatologist, to review the records related to Mr. Rowe's lipoma (*id.* ¶ 31); and scheduled Mr. Rowe for an independent medical examination ("IME") by Dr. Daniel A. Wecht in Pittsburgh, Pennsylvania (*id.* ¶ 33).  However, on February 3, 2011, Plaintiffs' counsel informed Nationwide that Mr. Rowe was unable to attend the scheduled IME appointment due to a disability preventing him from traveling to Pittsburgh, at least through May 7, 2011.  (*Id.* ¶ 34).  Nationwide cancelled the IME and attempted to reschedule the IME with Dr. Wecht at a later date.  (*Id.* ¶¶ 36-47).  On January 6, 2012, Dr. Gerald W. Pifer conducted an IME on Mr. Rowe in Ebensburg, Pennsylvania.  (*Id.* ¶ 47-48).

After completing its review, Nationwide offered Plaintiffs $5,000 to settle the UIM claim.  (*Id.* ¶ 50).  Plaintiffs rejected the offer and countered with a demand of $275,000. (*Id.* ¶ 51).  Thereafter, Plaintiffs filed suit against Nationwide on the UIM claim.  (*Id.* ¶ 53). On August 22, 2012, the parties settled the UIM claim for $50,000.  (*Id.* ¶ 54).

### B.  Procedural Background

Plaintiffs initiated this matter by filing a four-count complaint in the Court of Common Pleas of Cambria County.  (*See* ECF No. 1-2, Compl.)  On April 18, 2012, Defendants removed the matter to this Court (ECF No. 1), and subsequently filed an answer (ECF No. 7).  The parties then conducted discovery.

Mediation was held on August 22, 2012, during which the parties resolved the UIM claims.  (*See* ECF Nos. 19, 20).  However, the mediation did not resolve the bad faith claims.  On November 30, 2012, upon stipulation of the parties, the Court dismissed Counts One and Two of the complaint, related to the underlying UIM claim, with prejudice.  (*See* ECF No. 26).  Thus, only Counts Three and Four, which assert contractual and statutory bad faith claims against Nationwide, remain pending in this case.

On June 24, 2013, Defendants filed a motion for summary judgment (ECF No. 38), a brief in support (ECF No. 40), a concise statement of material facts (ECF No. 58),[4] and an appendix of supporting exhibits (ECF No. 58-1).  On July 22, 2013, Plaintiffs filed a response (ECF No. 59) to Defendants' motion, along with a brief in opposition (ECF No.

---

[4] On July 19, 2013, in accordance with the Court's Order of Protection (*see* ECF Nos. 32 and 57), Defendants filed an amended concise statement of material facts and appendix of exhibits (ECF No. 58) replacing its previously filed statement of facts and appendix of exhibits (ECF No. 39).

60), and an appendix of exhibits (ECF No. 59-2). With leave from the Court (*see* ECF No. 63), Defendants filed a reply brief (ECF No. 69) on August 7, 2013.

On June 24, 2013, Plaintiffs filed a motion for partial summary judgment (ECF No. 41), along with a brief in support (ECF No. 43), a concise statement of material facts (ECF No. 45), an amended concise statement of material facts (ECF No. 65-1), and an appendix of exhibits (ECF No. 65-2). Portions of these filings are redacted.

On June 26, 2013, Plaintiffs filed, under seal, a motion for partial summary judgment (ECF No. 47), along with a brief in support (ECF No. 48), a concise statement of material facts (ECF No. 66), and an appendix of exhibits (ECF No. 68). All of these sealed documents are identical to the previously filed corresponding documents, except that they are not redacted. The sealed documents contain personal information or information related to Nationwide's business practices, which the parties agree should not be publically available on the docket. The Court has reviewed the sealed, non-redacted documents. However, to preserve the sensitive information in those documents, the Court will only cite the redacted versions of the sealed documents in the record.

Defendants filed a brief in opposition (ECF No. 72) to Plaintiffs' motions for summary judgment on August 23, 2013, along with a response to Plaintiffs' concise statement of material facts (ECF No. 73).

On September 26, 2013, Defendants filed a supplemental motion for summary judgment (ECF No. 75) along with a brief in support (ECF No. 76). Plaintiffs filed a response and brief in opposition (ECF Nos. 77 and 78) on October 24, 2013. The parties have fully briefed the Court, and this matter is ripe for adjudication.

IV.    LEGAL STANDARD

Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010).  Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).  Material facts are those that will affect the outcome of the trial under governing law.  *Anderson*, 477 U.S. at 248.  The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party."  *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009).  "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'"  *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (*quoting Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial."  *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)).  "For

an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993).

## V.    DISCUSSION

Plaintiffs' complaint asserts a contractual bad faith claim (ECF No. 1-2, Compl. ¶¶ 30-33) and a statutory bad faith claim (*id.* ¶¶ 34-51) against Defendants.  Plaintiffs allege that Nationwide engaged in a pattern of activity evidencing the breach of its contractual and statutory duties of good faith and fair dealing concerning both the property damage claim and the UIM claim arising from the car accident involving Mr. Rowe.  (*Id.* ¶ 38).

In their first motion for summary judgment, Defendants argue that Plaintiffs have failed to demonstrate any evidence to support the bad faith claims.  (ECF No. 40 at 1). According to Defendants, following the accident, Nationwide adequately and appropriately investigated Plaintiffs' insurance claims and made reasonable offers to settle the claims.  (*Id.*).  Defendants assert that the sole basis for Plaintiffs' allegations of bad faith arise from a dispute over the value of the claims.  (*Id.*).  Defendants contend that the disagreement over the value of the claims is an insufficient basis for bad faith, and that Defendants are therefore entitled to judgment as a matter of law.  (*Id.*).

Plaintiffs, on the other hand, argue that summary judgment is proper in their favor on the issue of liability.  Plaintiffs' motion contains a short, two-and-a-half page argument

section, comprised almost entirely of block quotes from statutes and case law. Plaintiffs'

conclusory argument consists of the following assertions:

> Unfair insurance practices under 40 P.S. § 1171.5 include refusing to pay
> plaintiffs' claims, not attempting in good faith to effectuate a prompt, fair
> and equitable settlement of plaintiffs' claims in this clear liability case,
> compelling plaintiffs to institute litigation to recover the amounts due
> under their insurance policy, (Mr. and Mrs. Rowe were compelled to
> institute litigation against Nationwide **twice**), and attempting to settle
> plaintiffs' claims for less than the amount that a reasonable man would
> believe he was entitled to.

> In addition, 31 Pa. Code § 146.6 and 146.7 require that every insurer
> complete investigation of a claim within thirty days, and if the
> investigation cannot be completed within thirty days, provide the
> claimant with a reasonable **written** explanation for the delay stating when
> a decision may be expected **every forty-five days thereafter**. Nationwide
> cannot produce notices sent every forty-five days, because Nationwide
> did not send the notices.

(ECF No. 43 at 15-16) (emphasis in original). On this basis, Plaintiffs move for "summary

judgment as to liability." (*Id.* at 16).

The Court will separately address the two remaining claims in Plaintiffs'

complaint—the contractual bad faith claim and the statutory bad faith claim.


### A.      Count III – Contractual Bad Faith Claim

Plaintiffs' complaint and summary judgment motion focus almost exclusively on

the statutory bad faith claim. Nevertheless, the Court will briefly address Plaintiffs'

contractual bad faith claim asserted in Count III of the complaint.

A party asserting a breach of contract claim under Pennsylvania law must

demonstrate (1) the existence of a contract; (2) a breach of duty imposed by the contract;

and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003);

*Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa. Super. Ct. 2000). "In other words, a plaintiff must allege facts to establish that a contract exists or existed, including its essential terms, that defendant failed to comply with the covenant of good faith and fair dealing by breaching a specific duty imposed by the contract *other than the covenant of good faith and fair dealing,* and that resultant damages were incurred by plaintiff." *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 369 (E.D. Pa. 2009) (citations omitted).

"In Pennsylvania, a duty of good faith and fair dealing is implicit in an insurance contract." *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F. Supp. 2d 404, 408 (W.D. Pa. 2011). To prove a contractual bad faith claim, a plaintiff must show that the insurer's conduct was unreasonable or negligent. *CRS Auto Parts*, 645 F. Supp. 2d at 369; *DeWalt v. Ohio Cas. Ins. Co.*, 513 F. Supp. 2d 287, 296-97 (E.D. Pa. 2007). A contractual bad faith claim must be established by clear and convincing evidence. *Campbell v. State Farm Mut. Auto. Ins. Co.*, 617 F. Supp. 2d 378, 383 (W.D. Pa. 2008).

Generally, when an insurance company has paid the proceeds of an insurance policy, there can be no breach of contract claim because the insured has received what he was due under the policy and therefore has no damages. *See Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 521 (W.D. Pa. 2012) (citing *Fitzpatrick v. State Farm Ins. Co.*, No. 09-cv-1498, 2010 WL 2103954, at *2-3 (W.D. Pa. May 24, 2010)). However, when a party sues for damages stemming from an insurer's bad faith in handling a claim, the damages sought may be different from the damages compensated by payment pursuant to the insurance policy and therefore may not be remedied by such payment. *See Birth Ctr. v. St. Paul Cos.,*

787 A.2d 376, 385 (Pa. 2001); *Clunie-Haskins v. State Farm Fire & Cas. Co.*, 855 F. Supp. 2d 380, 388 (E.D. Pa. 2012). Thus, "where an insurer acts in bad faith, by unreasonably refusing to settle a claim, it breaches its contractual duty to act in good faith" and is liable for "the known and/or foreseeable compensatory damages of its insured that reasonably flow from the insurer's bad faith conduct." *Birth Ctr.*, 787 A.2d at 389; *Fitzpatrick*, 2010 WL 2103954, at *3-4.

Here, Plaintiffs have failed to show with clear and convincing evidence that Defendants' conduct was unreasonable or negligent. A contract clearly existed between the parties, and the terms of the insurance policy are not in dispute. However, Plaintiffs have failed to demonstrate that Defendants violated the covenant of good faith and fair dealing by breaching a specific duty imposed by the contract. As will be explained in more detail below, the evidence in the record shows that the settlement offers were based on Nationwide's honest, considered judgment following a careful and thorough investigation. *See DeWalt*, 513 F. Supp. 2d at 292. Plaintiffs' disagreement with Defendants over the value of their claims is simply not a basis for a contractual bad faith claim where Plaintiffs have not shown that Defendants breached some contractual duty.

Plaintiffs contend that their bad faith claims are not simply the result of a dispute over the value of their claims, but "cover **a lot** more than the unfair valuation of their claims by Nationwide." (ECF No. 60 at 2) (emphasis in original). Plaintiffs' argument, however, is contradicted by their own allegations. Plaintiffs base their contractual bad faith claim on the assertion that "Nationwide has failed and refused to pay Underinsured Motorists coverage to Plaintiffs, in breach of . . . the insurance contract." (ECF No. 1-2,

Compl. ¶ 33).  Plaintiffs further allege in their complaint, "Nationwide has offered only a fraction of the value of plaintiffs' claim."  (*Id.* ¶ 44).

In sum, Plaintiffs have failed to demonstrate with clear and convincing evidence that Defendants breached a duty under the insurance contract such that Nationwide should become "liable for the known and/or foreseeable compensatory damages of its insured that reasonably flow from the bad faith conduct of the insurer." *DeWalt*, 513 F. Supp. 2d at 292 (quoting *Birth Center*, 787 A.2d at 379).  Instead, Nationwide has demonstrated that it had a reasonable basis for its conduct.  Therefore, regarding Count III of the complaint, Defendants' first motion for summary judgment is granted, Plaintiffs' motions for summary judgment are denied, and this claim is dismissed as a matter of law.

### B.    Count IV – Statutory Bad Faith Claim

Plaintiffs also assert a statutory bad faith claim pursuant to 42 Pa. C. S. § 8371, which states:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> >
> > (2) Award punitive damages against the insurer.
> >
> > (3) Assess court costs and attorney fees against the insurer.

To establish a bad faith claim under the statute, "a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying

benefits under the policy; and (2) knew of or recklessly disregarded its lack of reasonable basis in denying the claim." *W.V. Realty Inc. v. N. Ins. Co.*, 334 F.3d 306, 312 (3d Cir. 2003); *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994). Courts have defined bad faith as "any frivolous or unfounded refusal to pay proceeds of a policy." *Nw. Mut. Life Ins. Co.* v. *Babayan*, 430 F.3d 121, 137 (3d Cir. 2005). An insurer's mere negligence or bad judgment is not bad faith. *Id.* at 137. To defeat a claim of bad faith, an insurer must only demonstrate that it had a reasonable basis for its decision. *Leach v. Nw. Mut. Ins. Co.*, No. 01-cv-2364, 2005 WL 3533116, at * 11 (W.D. Pa. Dec. 22, 2005) *aff'd*, 262 F. App'x 455 (3d Cir. 2008); *see also J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) ("A reasonable basis is all that is required to defeat a claim of bad faith.").

Section 8371 encompasses a broad range of conduct by an insurer. *Cohen v. State Auto Prop. & Cas. Co.*, No. 00-cv-3168, 2001 WL 120145, at *2 (E.D. Pa. Feb. 8, 2001). Among other conduct, bad faith includes: an unreasonable delay in handling claims; a frivolous or unfounded refusal to pay; a failure to communicate with the insured; acting in a dilatory manner; and settlement offers which bear no reasonable relationship to the insured's reasonable medical expenses. *See Willow Inn, Inc. v. Public Serv. Mut. Ins. Co.*, 399 F.3d 224, 235 (3d Cir. 2005); *Purcell v. State Farm Mut. Auto. Ins. Co.*, No. 11-cv-7004, 2012 WL 425005, at *11 (E.D. Pa. Feb. 10, 2012); *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999); *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006). A bad faith claim may also arise when an insurance company conducts an inadequate investigation. *Condio*, 899 A.2d 1136 at 1142.

To succeed on a bad faith claim pursuant to 42 Pa. C. S. § 8371, a plaintiff must prove bad faith with clear and convincing evidence and not merely by insinuation. *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 750 (3d Cir. 1994); *Cowden v. Aetna Cas. & Sur. Co.*, 134 A.2d 223, 229 (Pa. 1957). "At the summary judgment stage, the insured's burden in opposing a summary judgment motion brought by the insurer is 'commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial.'" *Babayan*, 430 F.3d at 137 (quoting *Koiserowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999)). Nonetheless, if a reasonable jury could find that Nationwide did not have a reasonable basis for denying benefits under the policy and knew of or recklessly disregarded this, summary judgment is not appropriate. *See Jung v. Nationwide Mut. Fire Ins. Co.*, 949 F. Supp. 353, 355-56 (E.D. Pa. 1997).

### *Analysis*

In the instant case, Plaintiffs support their statutory bad faith claim with the following allegations:

(1) Regarding the property damage claim, Nationwide offered far less than the car's value. (ECF No. 1-2, Compl. ¶ 39).

(2) Nationwide threatened to abandon Plaintiffs' car and charge the costs to Plaintiffs, unless Plaintiffs accepted Nationwide's low offer. (*Id.*).

(3) Plaintiffs' car was damaged while in Nationwide's possession. (*Id.*).

(4) Plaintiffs had to sue Nationwide to recover the property damage claim. (*Id.*).

(5) Nationwide attempted to force Mr. Rowe to violate his doctors' travel restrictions by requiring an IME in Pittsburgh, rather than selecting a physician close to Plaintiffs' home. (*Id.* ¶ 41).

(6) Nationwide delayed resolving the claims for its own economic benefit. (*Id.* ¶ 42).

(7) Nationwide failed to offer a prompt, fair, and equitable settlement under the UIM coverage for Mr. Rowe's personal injuries. (*Id.* ¶ 43).

(8) Nationwide engaged in unfair claims settlement practices by failing to complete its investigation within thirty days and by failing to provide a written explanation for the delay in violation of 31 Pa. Code § 146.6 and 146.7. (*Id.* ¶ 46).

(9) Nationwide engaged in unfair insurance practices under 40 P.S. § 1171.5 by refusing to pay Plaintiffs' claims; failing to promptly, fairly, and equitably settle Plaintiffs' claims; forcing Plaintiffs to initiate litigation to recover under the insurance policy; and attempting to settle Plaintiffs' claims for an unreasonable amount. (*Id.* ¶ 47).

The first four reasons for bad faith appear to involve the property damage claim, while the remaining five reasons appear to involve the UIM claim. The Court will address Plaintiffs' allegations of statutory bad faith under these two general categories.

### 1.      Property Damage Claim

Plaintiffs allege that Nationwide acted in bad faith in handling Plaintiffs' property damage claim. Plaintiffs contend Nationwide offered far less than the car's value; Nationwide threatened to abandon Plaintiffs' car unless Plaintiffs accepted Nationwide's

low offer; Plaintiffs' car was damaged while in Nationwide's possession; and Plaintiffs had to sue Nationwide to recover the property damage claim. Despite these allegations, Plaintiffs have failed to demonstrate with clear and convincing evidence that Nationwide acted in bad faith in handling Plaintiffs' property damage claim.

### *Nationwide's Valuation and Offer*

First, Nationwide's valuation of the vehicle was not unreasonable. After evaluating the vehicle, Nationwide determined that the car was a total loss and offered Plaintiffs $3,037.59 on the property damage claim. Plaintiffs rejected that offer, demanding $6,500 instead. Plaintiffs then filed suit, and a magistrate judge awarded damages in the amount of $4,776.29 against Nationwide in favor of Plaintiffs.

Contrary to Plaintiffs' allegations of bad faith, Nationwide had a reasonable basis for its offer. Nationwide's offer was based on a CCC Valuescope Market Report.[5] (ECF No. 58-10 at 17-37). Nationwide classified the car as a total loss and offered the market cash value of the car based on the CCC Valuescope report. (ECF No. 58-9 at 13). Nationwide asked Plaintiffs for any additional information that might change the valuation of the car. (*Id*.). Plaintiffs have not provided any evidence to show that the car was worth more than the market cash value calculated in the CCC Valuescope report. It is noteworthy that Mr. Rowe stated at his deposition that he agreed the car was a total loss and that, despite Plaintiffs' initial $6,500 demand, he believed the car was only worth $4,500.

---

[5] Nationwide's offer was also consistent with the total loss valuation offered by Lincoln General—$3,327.87. (*See* ECF No. 58 ¶ 56).

Accordingly, Nationwide has demonstrated a reasonable basis for its offer. *See Aquila v. Nationwide Mut. Ins. Co.*, No. 07-cv-2696, 2008 WL 5348137, *2 (E.D. Pa. Dec. 15, 2008) (finding insurer demonstrated reasonable basis for its valuation of vehicle in relying on CCC Valuescope report where no evidence was offered to dispute its accuracy); *Katta v. Geico Ins. Co.*, No. 2:11-cv-729, 2013 WL 275529, *10 (W.D. Pa. Jan. 24, 2013).

### *Nationwide's Threat to Abandon the Car*

Plaintiffs allege that Nationwide "threatened to abandon the vehicle and charge the costs to [Plaintiffs] unless they accepted Nationwide's low offer." (ECF No. 1-2 ¶ 39). Following the accident, Plaintiffs' car was transported to Copart Auto Auctions, a salvage yard, for evaluation by Nationwide. Following Nationwide's evaluation of the car, the car remained at Copart for nearly a year. Plaintiffs refused Nationwide's offer for property damage and failed to reclaim their car or to advise Nationwide what to do with the car. (ECF No. 58 ¶¶ 59-75). Nationwide repeatedly asked Plaintiffs for a status update. (*Id.* ¶¶ 66-72). However, Plaintiffs did not attempt to reclaim their car until April 14, 2008, after Nationwide sent notice of its intent to abandon the car. (*Id.* ¶¶ 71-72). At Plaintiffs' request, Nationwide delivered the car to Plaintiffs' residence. (*Id.* ¶ 73).

The evidence in the record shows that Nationwide sent Plaintiffs a letter explaining that, if Plaintiffs did not reclaim possession of their car, Nationwide would abandon the car and assess costs to the Plaintiffs. (ECF No. 58-9 at 18). Nationwide sent this letter after finishing its evaluation of the car and tendering an offer to Plaintiffs on the property damage claim, and after repeatedly communicating with Plaintiffs regarding the

status of the claim. Nationwide no longer needed the car to resolve the claims and was incurring storage fees. Nationwide's letter did not make its offer to settle the claim contingent on Plaintiffs' reclamation of their car. Thus, the letter was not a "threat" intended to coerce Plaintiffs into accepting an offer and is not evidence of bad faith. The letter was simply an effort by Nationwide to dispose of Plaintiffs' car and settle the claim.

### *Additional After-Accident Damage*

Similarly, the additional, after-accident damage to Plaintiffs' car while in Nationwide's possession does not establish bad faith. It is undisputed that, while Plaintiffs' car was being stored at Copart to undergo evaluation by Nationwide, the car sustained additional damage. However, Plaintiffs have failed to show that the additional damage constitutes bad faith. Nationwide's CCC Valuescope Report was generated prior to the additional damage. Nationwide classified the car as a total loss and calculated the car's value without factoring the additional damage. Thus, Nationwide's valuation of the property damage claim was in no way influenced by the additional, after-accident damage to the car. The car was deemed a total loss because of the accident—a conclusion which Mr. Rowe affirmed in his deposition. The Court agrees with Nationwide that, "Though the damage should not have happened, it does not establish that Nationwide acted in bad faith in the handling of the property damage claim." (ECF No. 40 at 25).[6]

---

[6] This conclusion does not address whether Nationwide must compensate Plaintiffs for any claims they might have against Nationwide for the additional damage, an issue which is not presently before this Court. However, the fact that the car sustained additional damage while being stored at Nationwide's valuation center does not establish bad faith without evidence that the damage was connected in some way to Nationwide's handling of the property damage claim.

*Plaintiffs' Decision to Sue*

Finally, the fact that Plaintiffs initiated litigation against Defendants is not evidence of bad faith. Plaintiffs allege in the complaint that they "had to sue Nationwide in order to be paid for their car." (ECF No. 1-2 at ¶ 39). Contrary to this assertion, Nationwide made a reasonable offer for the full market value of the car. Dissatisfied with Nationwide's valuation of the car, Plaintiffs rejected the offer and decided to sue Nationwide. Nevertheless, because Nationwide had a reasonable basis for its offer, and because Plaintiffs could have accepted that offer, Plaintiffs contention that they "had to sue Nationwide" is without merit and is not evidence of bad faith.

In sum, Plaintiffs have failed to demonstrate with clear and convincing evidence that Nationwide acted in bad faith in handling Plaintiffs' property damage claim. Instead, Nationwide has demonstrated a reasonable basis for its actions and is thus entitled to summary judgment.

## 2. UIM Claim

The essence of Plaintiffs' statutory bad faith action is that Nationwide failed to offer a prompt, fair, and equitable settlement under the UIM coverage policy provision with regard to Mr. Rowe's personal injuries. Plaintiffs contend Nationwide attempted to force Mr. Rowe to violate his doctors' travel restrictions by requiring an IME examination in Pittsburgh; Nationwide failed to complete its investigation within thirty days or provide a written explanation for the delay and delayed resolving the claims for its own economic benefit; Nationwide refused to pay Plaintiffs' claims; Nationwide forced

Plaintiffs to initiate litigation; and Nationwide attempted to settle Plaintiffs' claims for an unreasonable amount. The Court will separately address each of these allegations.

### *The IME*

Plaintiffs allege that Nationwide acted in bad faith by attempting to force Mr. Rowe to travel to Pittsburgh for an IME, in violation of his doctor's travel restrictions. (ECF No. 1-2 ¶ 41). Plaintiffs have failed to show bad faith.

To help evaluate Plaintiffs' UIM claim, Nationwide scheduled Mr. Rowe for an IME with Dr. Daniel Wecht, a physician in Pittsburgh with the UPMC Department of Neurological Surgery. (ECF No. 58 ¶ 33). After Nationwide notified Plaintiffs about the scheduled IME, Plaintiffs' counsel informed Nationwide that Mr. Rowe was prohibited from sitting for periods longer than one hour, at least through May 7, 2011. (*Id.* ¶ 34). Nationwide cancelled the IME and, on May 23, 2011, contacted Plaintiffs' counsel to follow-up on Mr. Rowe's disability status and travel limitations. (*Id.* ¶¶ 36-37). Plaintiffs' counsel then submitted two disability slips to Nationwide from Plaintiffs' doctors, which stated that Mr. Rowe had to "get out of motor vehicle frequently to walk and stretch" and prohibited "sitting for more than 1 hour without standing and moving about." (*Id.* ¶ 37-39; ECF No. 65-5 at 23-24).

Despite these travel restrictions, Mr. Rowe testified in his depositions (ECF No. 58-5; ECF No. 59-9) that, throughout 2010 and 2011, he traveled up to three days every other week for work, and that these work related trips typically lasted three hours one way. (ECF No. 58 ¶¶ 40-44).

After reviewing Mr. Rowe's disability slips, Nationwide again requested, on June 8, 2011, that Mr. Rowe submit to an IME with Dr. Wecht and offered to provide travel accommodations. (*Id.* ¶ 45). Again, Plaintiffs' counsel refused Nationwide's request for an IME with Dr. Wecht, stating that Mr. Rowe was medically unable to travel to Pittsburgh. Thereafter, Nationwide agreed to select a different physician closer to Plaintiffs' home and chose Dr. Pifer to conduct the IME. (*Id.* ¶¶ 46-47). Based on these undisputed facts in the record, Plaintiffs have failed to show with clear and convincing evidence that Nationwide acted in bad faith by scheduling an IME in Pittsburgh.

### *Improper Delay*

Plaintiffs allege that Nationwide acted in bad faith by delaying resolution of the claims. "Delay is a relevant factor in determining whether bad faith has occurred, but a long period of time between demand and settlement does not, on its own, necessarily constitute bad faith. . . . [I]f delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred." *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588-89 (E.D. Pa. 1999) *aff'd*, 234 F.3d 1265 (3d Cir. 2000).

Plaintiffs first assert that Nationwide delayed selecting an IME close to Plaintiffs' home for over a year, to Nationwide's economic benefit. (ECF No. 1-2 ¶ 42). However, Nationwide has produced ample evidence that the reason for the delay in scheduling an IME was the result of Plaintiffs' own refusal due to certain travel restrictions. The evidence in the record shows that Nationwide initially scheduled Mr. Rowe's IME in early 2011; that Nationwide cancelled the IME and attempted to reschedule the IME upon

learning of Mr. Rowe's travel restrictions; that Nationwide continued to communicate with Plaintiffs' counsel concerning Mr. Rowe's availability for an IME appointment; and that Nationwide finally rescheduled the IME with a doctor closer to Mr. Rowe's home, which was conducted in early 2012.

Thus, the record before the Court indicates legitimate delays that arose based on the circumstances of this case, largely due to Mr. Rowe's travel restrictions. The evidence shows that Nationwide attempted to accommodate Mr. Rowe's disability. There is simply no evidence from which a reasonable jury could find that the delay was the result of bad faith. *See Kosierowski*, 51 F. Supp. 2d at 590.

Plaintiffs also assert that Nationwide "failed in good faith to effectuate prompt . . . settlement" and engaged in unfair claims settlement practices by failing to complete the claims investigation within thirty days. (ECF No. 1-2, Compl. ¶¶ 43, 46-47). There is no dispute that it took the parties a prolonged period of time to resolve Plaintiffs' UIM claim. However, the evidence in the record shows that the length of time between the filing of the claim and final settlement of the claim was the result of Nationwide's investigation and Plaintiffs' own conduct.

A number of factors contributed to this protracted delay. First, Plaintiffs failed to submit medical records to support the claim, despite Nationwide's numerous requests. (ECF No. 58 ¶¶ 13-17). Next, Plaintiffs did not submit their UIM demand package to Nationwide until May 5, 2010, after Lincoln General tendered its $15,000 policy limits. (*Id.* ¶¶ 19-24). Thus, Nationwide did not receive Plaintiffs $313,500 demand package until nearly three years after the accident. (*Id.* ¶¶ 22-23). Next, as communicated to Plaintiffs'

counsel, Nationwide needed to collect additional records and conduct its own evaluation based on the demand package. (*Id.* ¶¶ 25-28).

To further evaluate Plaintiffs' claim, Nationwide obtained Mr. Rowe's statement under oath on September 22, 2010 (*id.* ¶ 30); retained Dr. Seraly, a licensed dermatologist, who issued a report concerning Mr. Rowe's lipoma on January 18, 2011 (*id.* ¶ 31); and scheduled an IME in early 2011, which was cancelled and ultimately rescheduled in January 2012 due to Mr. Rowe's travel restrictions (*id.* ¶¶ 33-48). Finally, after receiving Plaintiffs' demand package and supporting documentation, after reviewing both Dr. Seraly's and Dr. Pifer's reports, and after collecting Mr. Rowe's statement, Nationwide was able to adequately evaluate the claim. (*Id.* ¶¶ 49-50). Nationwide valued Mr. Rowe's injuries below Lincoln General's $15,000 payment, but decided to offer Plaintiffs $5,000 to settle the claim, and further offered to submit to high/low arbitration. (*Id.* ¶ 50). Plaintiffs rejected Nationwide's offer on February 14, 2012. The claim then proceeded to litigation, and the claim was settled on August 22, 2012, in mediation for $50,000. (*Id.* ¶¶ 53-54).

The record shows that, throughout the claims investigation, Nationwide communicated with Plaintiffs' counsel regarding the progress of the claim, and asked for additional documentation to support Plaintiffs' high demand. Most of the delays are directly attributable to Plaintiffs' failure to provide requested documentation and Mr. Rowe's inability to appear for the scheduled IME appointments. Here, the length of time it took to resolve Plaintiffs' UIM claim does not provide clear and convincing evidence for a reasonable jury to conclude that Nationwide acted in bad faith. *Williams v. Hartford Cas.*

*Ins. Co.*, 83 F. Supp. 2d 567, 573 (E.D. Pa. 2000) *aff'd*, 261 F.3d 495 (3d Cir. 2001); *Aquila v. Nationwide Mut. Ins. Co.*, No. 07-cv-2696, 2008 WL 5348137, *9-10 (E.D. Pa. Dec. 15, 2008).

Similarly, Plaintiffs have failed to provide evidence demonstrating that Nationwide failed to comply with 31 Pa. Code §§ 146.6 and 146.7. However, even if Nationwide was negligent in failing to inform Plaintiffs of the progress of the investigation in the precise manner mandated by the regulations, such negligence does not constitute bad faith in this case. *See Williams*, 83 F. Supp. 2d at 577. The record is replete with evidence of regular written and oral communication from Nationwide to Plaintiffs and Plaintiffs' counsel concerning the status and progress of the investigation. Thus, Plaintiffs have not demonstrated bad faith with clear and convincing evidence.

### Settlement of UIM Claim for Unreasonable Amount

Plaintiffs allege that Nationwide acted in bad faith by failing to equitably settle the UIM claim. According to Plaintiffs, Nationwide offered "only a fraction of the value of [P]laintiffs' claim." (ECF No. 1-2 ¶¶ 43-44). Contrary to Plaintiffs' allegations, the evidence in the record shows that Nationwide conducted a reasonable investigation and based its offer on the medical records and expert reports. Plaintiffs have failed to show with clear and convincing evidence that Nationwide's offer lacked a reasonable basis.

Following the accident, Plaintiffs asserted a bodily injury claim against Lincoln General, who settled Plaintiffs' bodily injury claim for the full $15,000 liability limit under Ms. Gayle's policy. (ECF No. 58 ¶¶ 19-20). Plaintiffs then demanded $313,500 in their UIM claim against Nationwide. (*Id.* ¶¶ 23-24). According to Plaintiffs, Mr. Rowe's

injuries included a lipoma on his forehead, which had to be surgically removed, and neck and back injuries, including cervical disc compressions and cervical and thoracic sprains. (*Id.* ¶ 23). After conducting an investigation, and taking into account the $15,000 bodily injury credit from Lincoln General, Nationwide offered Plaintiffs $5,000 to settle the claim. (*Id.* ¶ 50). Plaintiffs rejected the $5,000 offer and countered with a demand for $275,000. (*Id.* ¶ 51). Nationwide offered binding high/low arbitration, with $5,000 as the low and $100,000 as the high. (*Id.* ¶ 50). Plaintiffs also rejected this offer, explaining that they would only agree to arbitration if the high was the $500,000 policy limits and the low was $100,000. (*Id.* ¶ 52). On August 22, 2012, Nationwide settled the claim for $50,000 during mediation. (*Id.* ¶ 54).

Plaintiffs have not produced clear and convincing evidence that Nationwide's offer lacked a reasonable basis. To the contrary, Nationwide has demonstrated that its investigation and its offer were reasonable and based on medical records, expert reports, and other relevant information. Nationwide based its offer on the following.

Dr. Gerald W. Pifer examined Mr. Rowe for an IME on January 6, 2012, and reviewed Mr. Rowe's medical records and deposition testimony. (ECF No. 58-8). Dr. Pifer's IME report contains the following opinion:

> [Mr. Rowe] had soft tissue injuries to his thoracic and lumbar spine as a result of the motor vehicle accident he describes taking place on July 5, 2007. . . .
>
> There is a possibility that Mr. Rowe had a previous lesion of the right forehead which was traumatized slightly. He may have had a little bleeding in the area. This became more noticeable post-accident, and he had the lesion removed. He certainly has had excellent healing after that procedure.

> As far as the spine is concerned, it certainly does not seem by history that Mr. Rowe is any different than he was prior to the accident. . . .
>
> . . . [T]he soft tissue issues with his spine would have resolved within six months after the accident which would have put it in early 2008. . . . Mr. Rowe has no limitations as a result of the motor vehicle accident related to the symptoms that he has today which are certainly minimal.
>
> Mr. Rowe's prognosis is good. Mr. Rowe has no limitations at this time as a result of any accident related conditions.

(*Id.* at 5-6). Significantly, Dr. Pifer noted, "[Mr. Rowe's] life at this point, according to his history, is no different than it was prior to the accident." (*Id.* at 3).

Dr. Mark P. Seraly prepared an expert report regarding Mr. Rowe's lipoma after reviewing various photographs, pathology reports, Mr. Rowe's medical records, and Mr. Rowe's deposition testimony. (ECF No. 58-6). The report contains the following opinion:

> [T]here is no clinical evidence as documented in the objective medical record or laboratory/pathological evidence to conclude trauma following a motor vehicle accident on July 5, 2007 caused a pre-existing lipoma on the claimant's right forehead to increase in size.

(*Id.* at 2). Dr. Seraly also noted, "The post-operative photograph demonstrates an excellent cosmetic result with excision placement within a pre-existing forehead crease/wrinkle line." (*Id.* at 3).

Mr. Rowe's own statement under oath, taken September 22, 2010, is revealing. Mr. Rowe noted that he went to work following the accident and did not seek immediate medical attention. Mr. Rowe stated that he continues to enjoy the same activities, such as hunting and fishing, as he did before the accident. (ECF No. 58-5 at 11). Likewise, Mr. Rowe stated that he continues to work around the house, cutting the grass, keeping up general maintenance, and helping his wife with household chores, similar to before the

accident. (*Id.*). While Mr. Rowe stated that he sometimes suffers back pain and stiffness during these activities, (*id.* at 9), he also admitted that he experienced back pain prior to the accident and regularly treated with a chiropractor for general adjustments. (*Id.*). Likewise, Mr. Rowe explained that the lipoma on his forehead predated the accident, but that it grew in size following the accident. (*Id.* at 6). Mr. Rowe further testified that his dermatologist could not confirm with certainty that the accident caused the lipoma to grow. (*Id.* at 7). Mr. Rowe also stated that he was pleased with the removal of the lipoma and credited his doctor with concealing the scar from the procedure within a "character line" on his forehead. (*Id.* at 11-12).

At his deposition on December 10, 2012, Mr. Rowe stated that he did not miss any work as a result of the accident, except for some medical appointments sometime after the accident. (ECF No. 58-7 at 72). Nor did the accident prevent him "from earning more money" with his employer. (*Id.*). Furthermore, when asked why Plaintiffs decided to settle the UIM claim for $50,000—over $260,000 less than Plaintiffs' original demand—Mr. Rowe explained that he simply "needed the money" to pay bills, including his daughter's medical school tuition, student loans, rent payments, car payments and insurance, household bills, and vacation. (*Id.* at 69-71). Indeed, Mr. Rowe testified that he did not have any ongoing medical bills or any other bills related to the accident. (*Id.* at 69).

Based on its investigation and the reports and other records it had gathered, Nationwide adopted the following conclusions, which the Plaintiffs have not disputed:

- Mr. Rowe had pre-existing neck and back issues and treated with a chiropractor before the accident;

- Plaintiffs' counsel failed to provide any pre-accident records to Nationwide;

- Post-accident, Mr. Rowe treated with a chiropractor for approximately one month, followed by a one month gap in treatment, and then had minimal treatment for one more month in 2007;

- The chiropractor, and not a radiologist, interpreted Mr. Rowe's cervical x-rays;

- There were no MRIs submitted to Nationwide to confirm any injuries;

- The lipoma was also a pre-existing condition; and

- Medical bills for removal of the lipoma were not submitted to Nationwide for payment.

(ECF No. 58 ¶ 28). The foregoing evidence shows that Nationwide conducted a thorough investigation and had a reasonable basis for its offer on the UIM claim. Plaintiffs disagreed with Nationwide's valuation of the UIM claim. However, Plaintiffs have failed to present any evidence to dispute Nationwide's valuation.

### *Violations of Statute and Code Provisions*

Plaintiffs allege that Nationwide acted in bad faith by violating certain Pennsylvania statute and code provisions, including 31 Pa. Code §§ 146.6 and 146.7 and 40 P.S. § 1171.5. (ECF No. 1-2 at ¶¶ 46, 47). Plaintiffs have not provided evidence to support its allegations and Plaintiffs' allegations fail as a matter of law. *See Leach v. Nw. Mut. Ins. Co.*, No. 01-cv-2364, 2005 WL 3533116, *12-14 (W.D. Pa. Dec. 22, 2005) *aff'd*, 262 F. App'x 455 (3d Cir. 2008); *Purcell v. State Farm Mut. Auto. Ins. Co.*, No. 11-cv-7004, 2012 WL 425005, *6 (E.D. Pa. Feb. 10, 2012); *Williams v. Hartford Cas. Ins. Co.*, 83 F. Supp. 2d 567, 576 (E.D. Pa. 2000) *aff'd*, 261 F.3d 495 (3d Cir. 2001).

*Conclusion*

Nationwide has demonstrated that it had a reasonable basis for its decision, thus defeating Plaintiffs' statutory bad faith claim. Nationwide conducted a substantial, thorough investigation, which Nationwide used as the basis for determining the value of Plaintiffs' UIM claim. Plaintiffs have not met their burden of pointing to clear and convincing evidence from which a jury could conclude that Nationwide did not have a reasonable basis for its decision, or that Nationwide acted with knowledge or reckless indifference to the lack of such basis. *Leach v. Nw. Mut. Ins. Co.*, No. 01-cv-2364, 2005 WL 3533116, *11 (W.D. Pa. Dec. 22, 2005) *aff'd*, 262 F. App'x 455 (3d Cir. 2008); *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 591-92 (E.D. Pa. 1999) *aff'd*, 234 F.3d 1265 (3d Cir. 2000).

Accordingly, viewing the undisputed facts in the light most favorable to the Plaintiffs, Plaintiffs have not established clear and convincing evidence such that a reasonable jury could find that Nationwide acted in bad faith. Therefore, regarding Count IV of the complaint, Defendants' first motion for summary judgment is granted, Plaintiffs' motions for summary judgment are denied, and this claim is dismissed as a matter of law.

### C.     Defendants' Supplemental Motion for Summary Judgment

On September 26, 2013, Defendants filed a supplemental motion for summary judgment. (ECF No. 75). In that motion, Defendants argue Plaintiffs' bad faith claims regarding the property damage should be dismissed as time-barred. (ECF No. 76 at 1). The Defendants argue that the statute of limitations for bad faith claims in Pennsylvania is

two years, that Defendants paid Plaintiffs' property damage claim on November 19, 2009, and that Plaintiffs did not file suit on the bad faith claim until February 23, 2012, three months after the limitations period. (*Id.*).

In response, Plaintiffs argue that a cause of action for a continuing wrong begins to accrue only when the wrongful conduct stops. (ECF No. 78 at 4). Plaintiffs assert that "there has been a pattern of tortious activity by [Defendants] towards [Plaintiffs] beginning in 2007 and continuing to the present date, involving continuing and frequently repeated wrongs and breaches of fiduciary duty." (*Id.* at 5). Accordingly, Plaintiffs contend, the limitations period did not begin on November 19, 2011, as alleged by the Defendants, and the property damage claim is therefore not time-barred.

Because the Court grants Defendants' first motion for summary judgment (ECF No. 38) and dismisses Plaintiffs' bad faith claim for property damage on other grounds, the Court will deny Defendants' supplemental motion for summary judgment (ECF No. 75) as moot.

## VI.    CONCLUSION

The material facts in this case are not in dispute. Viewing the evidence in the light most favorable to Plaintiffs, judgment as a matter of law in favor of Defendants is proper on Plaintiffs' bad faith claims. Accordingly, the Court will **GRANT** Defendants' first motion for summary judgment and will **DENY** Plaintiffs' motions for summary judgment. An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER H. ROWE** *and* | ) | |
| **NANCY L. ROWE,** *husband and wife,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **CIVIL ACTION NO. 3:12-81** |
| v. | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| **NATIONWIDE INSURANCE COMPANY,** | ) | |
| **NATIONWIDE,** *and* **NATIONWIDE** | ) | |
| **INSURANCE COMPANY OF AMERICA,** | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this __19th__ day of March 2014, having considered the pending

summary judgment motions in this case, along with the briefs and supporting exhibits,

and in accordance with the foregoing memorandum, **IT IS HEREBY ORDERED** that

(1) Defendants Nationwide Insurance Company, Nationwide, and Nationwide Insurance Company of America's motion for summary judgment (ECF No. 38) is **GRANTED**;

(2) Plaintiffs Christopher H. Rowe and Nancy L. Rowe's motions for summary judgment (ECF Nos. 41 and 47) are **DENIED**; and

(3) Defendants' supplemental motion for summary judgment (ECF No. 75) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Clerk shall mark this case closed.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**